May I speak to the Court? Good morning, Your Honors. My name is Alexander English, and I'm here on behalf of the appellant, Alan J. Schneider. Can you speak up a little bit? I'm sorry, Your Honor. Is that any better? That's better. Excellent. I'm here today to ask the Court to reverse the District Court's dismissal of my client's case under the Clean Water Act because appellant believes that the District Court committed clear errors of law. Though it's unclear from the language of the District Court's opinion, the District Court appears to have dismissed the complaint against Appellee Donaldson under 12b-6, though it's, again, unclear whether the District Court converted that to a motion for summary judgment under Rule 56 or not. And as to Appellant Howard County, again, it's unclear, though it appears they dismissed under 12b-1, though they may have dismissed under 12b-6 in light of their finding in favor of Appellee Donaldson. Or in the alternative, it premised its dismissal on Burford abstention. But the core of the appellant's argument is that the District Court applied an incorrect standard of proof at the pleading stage, failed to draw all inferences in appellant's favor, misinterpreted the Clean Water Act, and, to the extent that it did so, improperly abstained under Burford. Appellant believes that, on the record before this Court, both appellees should be held liable for violations of the Clean Water Act, and Appellee Donaldson should be held ordered to fully remediate the site or undertake substantial off-site mitigation activities within the watershed as the Court deems appropriate. And the county should be placed under an injunction requiring it to ensure the proposed construction projects have secured all necessary environmental permits before it issues grading and or building permits. At minimum, remand is appropriate so that the appellant may be afforded an opportunity to conduct discovery and or adduce specific facts concerning the water quality of the tributary at issue and the impacts from the construction of the mortuary. So what's your authority to have the county liable to do any of these things? They have applied for and received enforcement authority for Maryland's stormwater and erosion control programs, under which has been delegated to them by the Maryland Environmental Article. And since MDE is the water quality... Wastewater and whatnot, it's not for a permit to do anything else other than premises that they own. Maryland Department of the Environment considers the entire county to be the MS-4, if we're talking about the municipal separate stormwater system permit. But as far as erosion and sediment control, that applies countywide, because that is specific duties under Maryland law. Do you have any case where a locality for premises other than what it owns or operates has been required under the Clean Water Act to go out and police entities within that municipality instead of the state? I do not believe I have any case to that effect, Your Honor, which makes this an issue of first impression. Sorry, I lost my train of thought for half a second there. Regarding the county, well, first off, as opposed to jurisdiction, the district court properly held that the appellant has alleged Article III standing as against Appellee Donaldson. There is an injury, in fact, fairly traceable to the construction, and a favorable decision would redress those injuries. However, the injury is also fairly traceable to the actions of the county. While it might not be the approximate cause, it still has created a determinative effect. You issue a grading and building permit. The natural and logical conclusion is that grading and construction will commence thereafter. In this case, there were three days between the issuance of the county permits and Donaldson commencing construction. So what did the county do wrong? The county did not require the prior approvals that it itself requires before issuing a grading or construction permit. What in particular? Any permits under the Clean Water Act, including – It doesn't issue those, does it? The state's authorized to do that, but not the county. The county does not itself issue discharge permits. That's true. However, under guidance that MDE had put forth, that was in effect at all times relevant. I don't believe I included that in the record, and I will send a 28-J letter to the court and the parties after this, as I only recently became aware of this myself. Anti-degradation provisions of the Clean Water Act, which is one of Maryland's – forms part of Maryland's water quality standards, has the greatest effect at the implementation level on local planning and land use decisions. Is there any duty for the county to require any of that, to do with that? The county itself does not have to – So you're suing the county for? For failing – We are suing the county for failing to require – to take all reasonable steps to ensure that the water quality standards within its jurisdiction are not violated. Because it issued a permit? Is that what you're saying? It issued a permit without adhering to the necessary procedures under the Clean Water Act. So you're essentially appealing the – its issuance of a permit. I mean, why do we have authority to review that, number one? And number two, I don't see what they did wrong legally. I mean, you haven't shown me any statute that says that they have to worry about the Clean Water Act in issuing the permit. Barring anything else, their MS-4 permit requires them to take all reasonable steps – Requires who? The county to take all reasonable steps. Let me get the exact language here. Let's see. Appendix 201 to 202. The county shall take all reasonable steps to minimize or prevent the contamination or other alteration of the physical, chemical, or biological properties of any waters of the state. And then it lists – it effectively repeats the definition of discharge of pollutant. Well, it seems like your complaint here is at least in part against the Maryland Department of Environment. And it's not a party, is it? It is not. However, the information required is under – Why wouldn't you have – you know, putting aside Burford abstention and all that, I mean, why wouldn't you have gone after the state agency that actually issues the permits instead of the county? Because, Your Honor, we are of the opinion that under South Appalachian Mountain Stewards and Ohio Valley Environmental Coalition, the burden to produce that information is on the appellant. And under the terms of the Stormwater Management article and the Erosion and Sediment Control article of Maryland law, the county is required to ensure that no discharge of sediment within its jurisdictional borders causes or creates – causes or contributes to a violation of water quality standards. Well, the Clean Water Act has been around for a long time, and it seems like if municipalities as opposed to the states were responsible for these things, there would at some point over all these decades be at least one case that would support your argument. I think because the county is not, again, issuing a discharge permit per se, most challenges would go to the state agency. However, under Maryland law, it is possible for the Maryland Department of the Environment to delegate any of its enforcement authority to the – to a county health officer. I believe that is Maryland Environment Article 1-301. And with that specific delegation, the county can be held responsible for failure to enforce just as if the state had failed to enforce. And to the extent that the county is not enforcing its stormwater management and erosion control plans adequately, or at least ensuring that – I don't quite understand the failure to enforce. I mean, that – it seems to me they issue a permit. That's their only duty is the requirements for issuing a permit or not. They don't have to enforce – they're not an enforcement arm. The state is. And the Clean Water Act delegates and accepts the state role as a participant. But it seems to me here your whole claim seems to be irregularities in the issuance of permits. We are arguing, Your Honor, that the appellant was denied both procedural and procedural rights under the anti-degradation regulations, as well as the information to which he was entitled pursuant to those regulations. And the county, under the Maryland Stormwater Management and Erosion – Regulations have to impose duties on people and persons who violate them. It has to create causes of action. You've not traced any of that. As a matter of fact, the state doesn't even do or follow an explicit degradation conclusion when the general permit is being applied, does it? I'm not aware of whether or not it does so, Your Honor. But to the extent that it does not, that would, I believe, be, in and of itself, a violation of the Clean Water Act for failure to actually have an enforceable anti-degradation. You didn't sue the state either. It's a strange suit, you know. I'm not sure you can even sue for violations of permits in the fashion you have in the issuance of permits and saying the permits were this or that. There's processes for appealing permits. And you're coming in generally, and the permits did issue. And it seems to me that the Donaldson Funeral Home is constructing their – undertaking their construction under permits that are valid. Nobody's suggested that they're invalid now. The permit shield of 33 U.S.C. 1342K only applies to the extent that the applicant has complied with all application requirements, including providing all necessary information. That was – The state's already – state and county, they've all concluded that everything's in order. That, Your Honor, is not entirely consistent with the Clean Water Act. The burden of production of information, certainly at the application stage, is on the applicant, not upon the state. As Judge Agee is, I'm sure, aware, in Sam's South Appalachian Mountain Stewards, this Court explicitly rejected the notion that the applicant can put the burden of production of information upon the permitting agency. Okay. I see that I am out of time for opening arguments. If you have any questions, Your Honor. Thank you, Mr. English. Mr. Cole? May it please the Court, Tom Cole and Talkin' O'Neal on behalf of the Donaldson appellees. I must respectfully disagree with my colleague in his characterization of the district court order and memorandum. It was quite clear. As a matter of fact, Judge Mott summarized this entire case when he commented that Schneider's claim against Donaldson and the county depends entirely on the veracity of his claim that Donaldson was constructing in the absence of a general stormwater permit. The district court determined that such a permit had been issued and, therefore, the only claimed violation of the Clean Water Act, construction in the absence of a permit, was not a violation of the Clean Water Act, that there was no standing for Schneider to bring that claim. I apologize to the appellant to bring that claim. The district court then went on to evaluate the collateral attack against the issuance of that permit. We've talked and we've gone over the case law applicable under the Clean Water Act, but in more practical terms, what the appellant is seeking is a permit seeker to go to a regulatory agency, seek a permit, then once a permit is issued, the permittee is then to say, no, no, no, regulatory agency, here's additional information that you have not requested or required of me that I'm going to submit. Just as that makes no practical common sense, it is also not what is required under the Clean Water Act. The Clean Water Act simply requires that any time there is to be discharge from a point source, there is to be a permit obtained under, in this case, the state regulatory agency. The EPA issues permits, but then it may also determine to delegate that authority to the state regulators, which is what it did in this case. Now, federal courts have consistently held that citizens lack statutory standing under the Clean Water Act once any violation has been cured. In this case, there is no question, and it is not disputed, that the sole violation of the Clean Water Act by the appellant has been cured. The fact that it was alleged Donaldson was operating in the absence of a stormwater discharge permit, it was determined by the court that such a stormwater permit had been issued, therefore there is no other violation. The other two counts of appellant's complaint was that, one, a permit was necessary from the Army Corps of Engineers under Section 404, and then also that Maryland should have required of Donaldson an anti-degradation review prior to issuing that permit. As to Section 404, the regulations are quite clear that Section 404 only applies if the Army Corps of Engineers has applied a jurisdictional determination to those waterways. Appellant did not allege such a jurisdictional determination, and no such permit was required. As for the anti-degradation review, this is where we get right to the heart of the collateral attack doctrine. The State has concluded that everything is in order. The State has concluded that the permit application was appropriate, all supporting documents were appropriate, the permit was issued, and subsequent inspections have occurred. Contrary to the argument put forward by appellant, there has been no allegation that the appellees, the Donaldson appellees, have violated that permit. That is simply not part of this case. The only violation is that they were operating in the absence of a permit. And as was discussed during argument, there is a process by which the appellant could have, had they chosen to, appealed the issuance of that permit. In State court, it can be contested or it can be just a legal review. That avenue was fully available. It was not undertaken by the appellant. They failed to exhaust their administrative remedies. They failed to exhaust their opportunity to challenge that permit and now seek to have this court do so. And as the district court determined, there is no jurisdiction to do so and the appellant does not have standing to bring such a suit. Unless the court has any further questions, I would defer the rest of my time to my fellow appellee. Thank you. Mr. Taylor. Good morning, Your Honors. Louis Taylor on behalf of Howard County. Lou Ruzzi at council table. May it please the court. Howard County asks that the court uphold the district court and find that this action should be dismissed both for lack of standing and failure to state a claim. The act does not require the county to conduct an anti-degradation review prior to performing the local core government functions at issue here. No court has recognized the claims Mr. Schneider asserts against the county. He has not alleged any activity on the part of the county that constitutes a violation of the Clean Water Act. The act regulates discharges from a point source and may reach activity that Donaldson or MDE, the Maryland Department of Environment, has engaged in here, but not Howard County. Because Mr. Schneider has failed to state a claim and has failed to meet the statutory and constitutional standing requirements necessary to bring this suit, his action should be dismissed. And at this point, I would take any questions from the court if there are any pressing. And if not, I'll note that the appellant did not meet the statutory notice requirements in this case. He did not clearly identify a specific standard or effluent limitation that the county violated. And on that ground alone, Your Honors, this action should be dismissed. The action is, in fact, a collateral attack on a local land use decision that has nothing to do with the Clean Water Act. That decision was appealed to Maryland's highest court, and the Howard County Board of Appeals was upheld all along the way. Having failed in the appropriate state form, Mr. Schneider now seeks to use the Clean Water Act to control the administrative processes of local government land use decision making and the issuance of building permits. The Clean Water Act does not control such local functions. It controls discharges from a point source. In addition to the failure of the notice letter, Your Honors, Mr. Schneider has not adequately established standing. He has not clearly articulated a factual injury. He certainly has not articulated facts showing causation on the part of the county for any type of injury. And because of all that, the court is unable to redress his injury by ordering the county to act or refrain from performing any act. Moreover, because the violation is not ongoing, the entire matter is moot. Your Honors, for the first time today, Mr. Schneider has acknowledged that this is a novel action. Rule 11 requires that if an action is not warranted by existing law, the pleadings shall be clear and expressed on that point and make an argument for extending, modifying, or reversing existing law or for establishing new law. That argument has not been presented, Your Honor, until today. The citizens who performed this function here, Donaldson was put on notice that they needed a permit. They got a permit. In fact, Your Honor, it was the county that informed MDE that there might be an issue with the wetlands, and it was in response to the county's inquiries that MDE came out and evaluated the property. And as Mr. Cole acknowledged later on in the process, MDE did not have any issues with the activities at the Donaldson property. The act simply does not require that the county be responsible for the legal compliance of private parties. Your Honors, in conclusion, the Clean Water Act governs discharges, not land use decisions of local governments. Appellant has failed to meet statutory and constitutional standing requirements and failed to allege a violation of the Clean Water Act by the county. There is no authority for his argument that the act controls the Howard County Board of Appeals or the issuance of local building permits. For all these reasons, appellant's argument should be strongly rejected, the lower court should be upheld, and this action dismissed. Thank you, Your Honors. Thank you, Mr. Taylor. Mr. English, you have a little time reserved. So, Your Honors, going to the argument that there's been no allegation of a violation on the part of Donaldson is ignoring the expert report and affidavit submitted as part of the complaint alleging that the construction would cause a permanent lowering of water quality beneath the standards for a Tier 2 designation. Donaldson's permit that it purports to hold under the general construction permit requires it to control sediment and other discharges such that it will not cause or contribute to any excursion above any water quality standard. Well, they issued the permit, and you should challenge the permit, right? Your Honor, we believe, my understanding of the law is that they rejected your argument. They authorized a permit with the buffer zone, and you could have challenged that and say that it was inadequate, I suppose, or procedurally irregular, or whatever your argument was, but I don't see how you can come here now and collaterally attack that. I do not believe that this is a collateral attack, Your Honor, as, again, they were required to produce substantive information as part of the application process. They did not do so. The permit shield does not reach discharges that aren't covered by information provided by the applicant. What are you alleging now that you could not have taken up once the permit was issued with the Maryland state proceedings? Your Honor, simply because Maryland state proceedings were available does not divest the federal courts of jurisdiction under the Clean Water Act. There is, in our opening brief, I believe, we... What section authorizes you to challenge the collaterally attacked permits that were issued by states and counties? Again, Your Honor, we are not, I don't consider this to be a collateral attack. I consider it to be... Oh, but you have to look at the complaint, what the complaint says. Your complaint basically says that they were proceeding with construction without permits and that permits actually were issued and... If the permit... And they somehow tried to cabin that into the Clean Water Act, but I don't even think the language of the Clean Water Act reaches that, does it? Your Honor, if a discharge is not covered by the permit, even if a permit is held, the discharges that are outside the coverage of the permit are... Well, you haven't alleged that any discharge is outside the permit in your complaint. Your Honor, because the allegations that the Tier 2 waterway has no assimilative capacity remaining, discharges such as from construction... You haven't alleged that, have you? Yes, we have, Your Honor. Where? What paragraph? Incorporating Exhibit 12 to the complaint, which begins... Paragraph what? Let's see. Paragraph 64 incorporates the expert report. And as part of the counts, the expert report, as one of the exhibits to the complaint, is explicitly incorporated into the complaint. How does that put any party on notice of a legal claim? The notice of intent to sue, Your Honor, did in fact notify the parties that the appellant was seeking to enforce the anti-degradation provisions of Maryland water quality standards. And within the notice of intent to sue, it notes that there is... in the stream, and that, therefore, an anti-degradation review is required, and cites to the Maryland regulations included therein. If the court does not believe that the Maryland regulations are enforceable under the Clean Water Act, then I don't know what else to tell you, Your Honors. But we are of the opinion, appellants of the opinion, that because of the unambiguous command of the regulations that an applicant for a discharge to a Tier 2 waterway shall provide an anti-degradation review and lists a number of analyses required as part of that review, alleging a violation of the anti-degradation policy is sufficient to bring suit under the Clean Water Act. As to the collateral attack, the cases relied upon, notably Palumbo, are very different. Those were transfers of ownership of the permit, not omissions of material information required prior to the discharge. As the court held in South Appalachian Mountain Stewards, requiring the permitting agency to actively go out and seek all information before it grants a permit turns the presumptions of the Clean Water Act on its head. The responsibility for providing information falls squarely on the shoulders of the applicant. And as to the county, I believe that an applicant has, in fact, alleged a concrete injury that is fairly traceable, not necessarily approximately caused by, but fairly traceable to, I'm out of time, Your Honors, if I may finish my statement. Yes, you may. Fairly traceable to, if not approximately caused by, the actions of the county. And I believe in both the opening brief on pages 52 through 54 and pages 21 to 23 of the reply brief, applicant has set forth examples of how, at least as to the county, a favorable decision would address his injuries. Thank you, Your Honors. Thank you very much. I want to ask the clerk to declare a very, very brief recess to prepare the court for our last case. And as a courtesy to the public, let you know that this last case is not open to the public, which is different than our normal practice by open public courts, but I explain that because those persons who are not involved in the case in the public will have to leave. So please do that, and they will come down to Greek Council. This court will take a brief recess.
judges: Roger L. Gregory, Paul V. Niemeyer, G. Steven Agee